IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CICI ENTERPRISES, LP, and<br>YES CAPS, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-1202-E |
| | § | |
| FOGEL ENTERPRISES, INC., | § | |
| NOLAN B. FOGEL and | § | |
| BABETTE L. FOGEL | § | |
| | § | |
| Defendants. | § | |

## ORDER AND MEMORANDUM OPINION

Before the Court is Plaintiffs CiCi Enterprises, LP and Yes Caps, LLC's Application for Temporary Restraining Order and Motion for Preliminary Injunction. (Doc. 13). Plaintiffs request a temporary restraining order and preliminary injunction enjoining Defendants from: (1) infringing on Plaintiffs' federally-registered trademarks in violation of the Lanham Act; (2) unfairly competing with Plaintiffs in violation of the Lanham Act; and (3) breaching their post-termination non-competition covenant under their franchise agreement with Plaintiffs. Additionally, Plaintiffs request that the Court award Plaintiffs costs and expenses, including reasonable attorneys' fees, in connection with this action. Having considered the motion, the response and reply, the record, and the relevant law, the Court hereby **GRANTS IN PART** the Motion with respect to the preliminary injunction. Because the Court is granting the preliminary injunction, the Court **FINDS AS MOOT** the application for temporary restraining order. Finally, Court **DENIES WITHOUT PREJUDICE** the Motion with respect to the request for attorneys' fees. The Court will enter a preliminary injunction by separate order filed today.

# I. BACKGROUND

This action arises out of a failed franchise relationship between Plaintiffs CiCi Enterprises, LP and Yes Caps, LLC (collectively "Plaintiffs") and Defendants Fogel Enterprises, Inc., Nolan B. Fogel, and Babette L. Fogel (collectively "Defendants").

Plaintiffs are affiliated companies organized in Delaware and have a shared principal place of business in Dallas, Texas. From September 2003 to April 2021, CiCi Enterprises, LP ("CiCi's") was the national franchisor of CiCi-branded restaurants, with over 300 CiCi's-brand buffet-style restaurants across the country. Yes Caps, LLC ("Yes Caps") owns and licenses to CiCi's the intellectual property used in connection to CiCi's franchising. Defendants Nolan B. Fogel and Babette L. Fogel (collectively "Fogels") are the sole shareholders of Defendant Fogel Enterprises, Inc. ("FEI"). In August 2015, FEI entered into a written franchise agreement ("the Franchise Agreement") with CiCi's to own and operate a CiCi's franchise in Branson, Missouri ("the Restaurant").

The Franchise Agreement includes a license to use CiCi's proprietary system and trademarks in connection with the operation of the Restaurant and was set to expire on August 24, 2025, unless terminated before then. The Fogels, as FEI's sole shareholders, personally guaranteed FEI's contractual obligations under the Franchise Agreement and agreed to be personally bound by—and personally liable for the breach of—each provision in the Franchise Agreement, including the non-competitive covenant contained therein.

Pursuant to the Franchise Agreement, CiCi's authorized Defendants to use its proprietary system and operate the Restaurant under CiCi's trademarks. (Doc. 15-1, Ex. A-1: Franchise Agreement, § I(A)). In exchange, Defendants agreed to, *inter alia*: (1) operate the Restaurant under CiCi's standard hours of operation; (2) participate in CiCi's online ordering system; (3) submit to CiCi's weekly net sales reports; (4) pay CiCi's a continuing royalty fee based on a percentage of

---

MEMORANDUM OPINION AND ORDER

the Restaurants net sales—ranging from four to six percent depending on the volume of sales—for the entirety of the Franchise Agreement's term; and (5) purchase products and supplies from approved suppliers. (*See* Doc. 15-1, Ex. A-1: Franchise Agreement, §§ IV, VII). The Franchise Agreement also includes a non-competition covenant. Specifically, Defendants agreed not to compete with CiCi's for a period of two years following termination or expiration of the Franchise Agreement by operating a competitive business—as defined by the Franchise Agreement—within ten miles of the Restaurant's approved location, the protected area identified in the Franchise Agreement, or any other CiCi's location.[1] (*See* Doc. 15-1, Ex. A-1: Franchise Agreement, § X(C)(2)(c)).

The Franchise Agreement expressly provides that each of the obligations described therein are "material and essential obligations." (Doc. 15-1, Ex. A-1: Lease Agreement, § XVI(A)(1)). Section XVI(A)(3) of the Franchise Agreement: (1) specifies the acts or omissions of Defendants that constitute material default under the Franchise Agreement; and, if such defaults occur, (2) gives CiCi's the option to terminate the Franchise Agreement—effective immediately upon written notice to Defendants—without an opportunity to cure. (*See* Doc. 15-1, Ex. A-1: Franchise Agreement, § XVI(A)(3)). The material defaults identified in § XVI(A)(3) include, but are not limited to:

> (j)      If Franchisee or any of its affiliates or Controlling Principals fails, refuses, or neglects promptly to pay any monies owing to Franchisor or any of its affiliates, when due under this Agreement or any other agreement (including, without limitation, any other development or franchise agreement with Franchisor for any type of facility), or to submit the financial or other information required by

---

[1] The Restaurant's "Approved Location" is at 3460 W. Highway 76, Branson, Missouri 65616; the "Protected Area" is described as "[t]he geographic area within a one and a half (1.5) mile straight line radius around the Approved Location at 3460 W. Highway 76 in Branson, Missouri[.]" (Doc. 15-1, Ex. A-1: Franchise Agreement, Attachment A). Because the approved location is within the protected area, for the purposes of the non-competition covenant, the Court will refer to the non-competition covenant as an agreement to not operate a competitive business within ten miles of the protected area for the remainder of this memorandum opinion.

Franchisor under this Agreement and does not cure such default within five (5) days following notice from Franchisor;

. . . .

(s)      If Franchisee fails to comply with the software license requirements in Section VII.F. and fails to cure such default within thirty (30) days following written notice from Franchisor;

. . . .

(t)      If Franchisee, or any of the Controlling Principals repeatedly commits a material breach[2] under this Agreement, whether or not such breaches are of the same or different nature and whether or not such breaches have been cured by Franchisee after notice by Franchisor;

(Doc. 15-1, Ex. A-1: Franchise Agreement, § XVI(A)(1)(j), (s), (t)). In the event of termination, the Franchise Agreement provides that Defendants shall immediately, *inter alia*: (1) cease operation of the Restaurant; (2) de-identify the Restaurant as being, or having been, associated with CiCi's or the CiCi's brand; (3) cease use of the CiCi's marks and name; (4) return to CiCi's all confidential and proprietary information, including operations manuals; (5) pay to CiCi's all amounts due and owed; and (6) comply with the Franchise Agreement's post-termination non-competition covenant. (*See* Doc. 15-1, Ex. A-1: Franchise Agreement, § XVII).

From October 2016 to January 2022, CiCi's sent Defendants six notices of default and opportunity to cure. Plaintiffs have submitted a copy of each of these notices into evidence along with a declaration that they are true and accurate copies of the originals. On October 7, 2016, CiCi's sent Defendants a notice of default and opportunity to cure regarding the use of unapproved products. (Doc. 15-1, Ex. A-2: Oct. 7, 2016, Notice). On May 3, 2021, CiCi's sent Defendants a notice of default and opportunity to cure regarding Defendants' failure to operate the Restaurant during CiCi's standard hours of operation—stating that Defendants had been closing the

---

[2] Material breaches include, but are not limited to, the failure to comply with the requirements of § VI(A), in which Defendants covenant and agree to operate the restaurant in accordance with the requirements of § VII, which in turn includes the requirement that Defendants open the Restaurant during CiCi's standard hours of operation. (Doc. 15-1, Ex. A-1, Franchise Agreement, §§ VI(A), VII(E)(8)). It is also a material breach of the Franchise Agreement for Defendants to fail to obtain items from CiCi's approved suppliers. (Doc. 15-1, Ex. A-1: Franchise Agreement, § VII(D)).

Restaurant Mondays through Wednesdays since April 12, 2021. (Doc. 15-1, Ex. A-3, May 3, 2021, Notice). On January 20, 2022, CiCi's sent a second notice of default regarding unauthorized hours of operation—stating that Defendants had been closing the Restaurant "each week on Monday through Thursday of the winter season without prior authorization of CiCi's." (Doc. 15-1, Ex. A-4, Jan. 20, 2022, Notice).

On January 21, 2022, CiCi's sent Defendants three separate notices of default. The first of these notices referenced Defendants' failure to sign up for the CiCi's online ordering system in violation of the Franchise Agreement and notified Defendants that "[f]ailure to cure in a timely manner [would] be deemed a material default[.]" (Doc. 15-1, Ex. A-5: Jan. 21, 2022, Notice—Online Ordering). The second notice informed Defendants that their failure to provide weekly net sales reports since January 2, 2022, was a material default of the Franchise Agreement and demanded that Defendants submit such information within five days to avoid termination of the Franchise Agreement. (Doc. 15-1, Ex. A-6: Jan. 21, 2022, Notice—Sales Report). Finally, the third notice informed Defendants that they had violated the Franchise Agreement by: (1) failing to place a food order for the Restaurant from approved suppliers for the previous three weeks; and (2) submitting previous orders that were missing key proprietary items. (Doc. 15-1, Ex. A-7: Jan. 21, 2022, Notice—Unapproved Products).

According to the sworn declaration of CiCi's Chief Operating Officer Jeff Hetsel, Defendants failed to cure the above-referenced defaults. Consequentially, CiCi's outside counsel—at Hetsel's direction—sent Defendants a notice of termination (the "Termination Notice") on February 21, 2022, informing them that CiCi's was terminating the Franchise Agreement, effective ninety days after the delivery of the Termination Notice ("the Termination Date"). The Court takes judicial notice that ninety days after February 21, 2022, was May 22,

2022, which was the Termination Date under the terms of the Termination Notice. The Termination Notice informed Defendants that, on the Termination Date, "FEI must immediately cease operating the Restaurant and comply with all obligations" triggered by termination, including but not limited to: (1) cease using CiCi's trademarks, confidential information, and other intellectual property; (2) de-image the interior and exterior of the Restaurant to remove association with CiCi's; (3) destroy materials bearing CiCi's trademarks; (4) return all confidential information; (5) pay monies owed to companies; and (6) comply with the Defendants' obligations regarding competitive businesses. (Doc. 15-1, Ex. A-8: Termination Notice). The Termination Date of May 22, 2022, has come and gone, yet Defendants continue to operate the Restaurant, use CiCi's trademarks, and hold their business out as a CiCi's location.

On May 23, 2022, FEI filed a lawsuit against CiCi's in the United States District Court for the Western District of Missouri—requesting declaratory judgment, injunctive relief, and damages for what they allege was a pre-textual termination of the Franchise Agreement (the "Missouri Federal Case"). On June 2, 2022, Plaintiffs initiated this proceeding, asserting claims of: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) breach of contract, seeking specific performance of Defendants' post-termination obligations; and (4) a breach of contract, seeking damages for violation of the terms of the Franchise Agreement. (Doc. 1, pgs. 9-12, ¶¶ 45-63).

On July 12, 2022, Defendants filed with this Court a Motion to Dismiss Complaint Under the First-Filed Rule or, in the Alternative, to Transfer, (Doc. 10), arguing that Plaintiffs' claims should either be dismissed for improper venue or transferred to the Western District of Missouri. Plaintiffs then filed the instant Application for Temporary Restraining Order and Motion for

Preliminary Injunction ("the Motion") on August 1, 2022. (Doc. 13). On October 6, 2022, the Western District of Missouri dismissed the Missouri Federal Case because Defendants filed the Missouri Federal Case in violation of a the Franchise Agreement's forum-selection clause agreement between the requiring the parties to file any suit between them in the Northern District of Texas. (Doc. 24-1). Accordingly, on October 20, 2022, the Court issued an order denying Defendants' Motion to Dismiss. (Doc. 26). The same day, the Court issued an order, (Doc. 27), referring this case to medication, which failed to produce a settlement.

The Court now considers Plaintiffs' request for a temporary restraining order and preliminary injunction. Plaintiffs request a temporary restraining order and preliminary injunction that: (1) enjoins Defendants from infringing on Plaintiffs' federally registered trademarks in violation of the Lanham Act; (2) enjoins Defendants from unfairly competing with Plaintiffs in violation of the Lanham Act; and (3) requires Defendants comply with the post-termination non-compete covenant by ceasing to compete with Plaintiffs by operating a pizza restaurant within ten miles of the Restaurant and formerly protected territory. (Doc. 13). Plaintiffs also request costs and expenses, including reasonable attorneys' fees, related to the prosecution of the Motion. (Doc. 13). The Motion has been fully briefed and is ripe for determination.

## II.   LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that should be granted only if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013); *see also* FED. R. CIV. P. 65. "The decision to grant or deny a

preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). A plaintiff is not required to prove its entitlement to summary judgment in order to establish a substantial likelihood of success on the merits for preliminary injunction purposes. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). But the movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light*, 760 F.2d at 621.

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a federal court may only issue a preliminary injunction "on notice to the adverse party." FED. R. CIV. P. 65(a)(1). The Fifth Circuit has "'interpreted the notice requirement of Rule 65(a)(1) to mean that where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted.'" *PCI Transp., Inc. v. Fort Worth & W. R. Co.,* 418 F.3d 535, 546 (5th Cir. 2005) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996) (quoting, in turn, *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 342 (5th Cir.1984))) (some internal quotation marks omitted). "If no factual dispute is involved, however, no oral hearing is required; under such circumstances the parties only need be given 'ample opportunity to present their respective views of the legal issues involved.'" *Kaepa*, 76 F.3d at 628 (quoting *Commerce Park*, 729 F.2d at 341) (holding that the district court did not violate Rule 65(a)(1) in granting a preliminary injunction without an oral hearing because it did not rely on disputed facts and both parties submitted comprehensive memorandums of law in support of their positions).

### III.  ANALYSIS

The Court now considers the Plaintiffs' Motion. There are no facts in dispute in this case. Neither party has requested an oral hearing, and both parties have submitted memorandums of law in support of their positions on the issues underlying the Motion. As such, the Court decides the Motion on the papers without an oral hearing. *See Kaepa*, 76 F.3d at 628.

The Court considers the request for a temporary restraining order and preliminary injunction in two parts. First, because Plaintiffs request that the Court preliminarily enjoin Defendants from using Plaintiffs' federally-registered trademarks and unfairly competing with Plaintiffs in violation of the Lanham Act, the Court considers whether a preliminary injunction based on Plaintiffs' Lanham Act claims is warranted. Second, because Plaintiffs additionally request that the Court preliminarily enjoin Defendants from operating a pizza restaurant—even without the use of Plaintiffs' trademarks—within ten miles of the formerly protected area, the Court considers whether a preliminary injunction based on Plaintiffs' claim of breach of contract regarding the Franchise Agreement's post-termination non-compete covenant is warranted.

For the reasons discussed below, the Court concludes that a preliminary injunction is warranted on both grounds and therefore grants the Motion with respect to the requested preliminary injunction. Because the Court is issuing a preliminary injunction, the Court finds the application for temporary restraining order moot. Finally, the Court denies Plaintiffs' request for attorneys' fees without prejudice to refiling.

### A.    Lanham Act Claims

#### 1.    *Likelihood of Success on the Merits*

The Court first considers whether Plaintiffs have established a substantial likelihood that it will prevail on its claims under the Lanham Act. In doing so, the Court need only consider the

likelihood that Plaintiffs will prevail on their trademark infringement claim under 15 U.S.C. §
1114(1) because unfair competition claims under 15 U.S.C. § 1125(a) are governed under the same
standard as those for trademark infringement. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d
477, 483 (5th Cir. 2004); *see also Matrix Essentials, Inc. v. Emporium Drug Mart*, 988 F.2d 587,
592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section 1125(a) unfair
competition claim is whether the defendant's actions are 'likely to cause confusion.'"). For the
reasons discussed below, the Court concludes that Plaintiffs have submitted strong and undisputed
evidence that they have a substantial likelihood of prevailing on their Lanham Act claims.

"Though federal law does not create trademarks, Congress has long played a role in
protecting them." *B & B Hardware*, 575 U.S. 138, 142 (2015). The Lanham Act currently
embodies the federal trademark scheme. *Id.*; 15 U.S.C. § 1051 *et seq.* The Lanham act authorizes
owners of trademarks that are used in interstate commerce to bring infringement actions in federal
court. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also* 15 U.S.C. §
1114(1)(a) (registered marks). To prevail on a trademark infringement claim under the Lanham
Act, "a plaintiff must first show that the mark is legally protectable and then must establish
infringement[.]" *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)
(citations omitted). An infringement exists "where one 'uses (1) any reproduction, counterfeit,
copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4)
in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where
such use is likely to cause confusion, or to cause mistake or to deceive.'" *Id.* (quoting *Boston Prof'l
Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir.1975); 15
U.S.C. § 1114).

---

The only element of a trademark infringement claim disputed by the parties is whether Defendants' continued use of the CiCi's trademarks are authorized. Defendants do not dispute that: (1) Yes Caps is the owner of the federally-registered trademarks, service marks, trade names, logos, emblems, commercial symbols, and indicia of origin relating to the CiCi's brand and franchise system (the "CiCi's Marks"); and (2) Yes Caps licensed the CiCi's Marks to CiCi's for use in the CiCi's franchise system. Moreover, Defendants do not dispute that they were only authorized to use the CiCi's Marks in connection with the operation of the Restaurant and in the manner proscribed in the Franchise Agreement. Defendants also do not dispute that they are currently using the CiCi's Marks in commerce in connection with the sale of goods. Finally, Defendants do not dispute that they are using CiCi's exact marks—not merely similar marks—and are holding out the Restaurant as a CiCi's location. Thus, if Defendants are using CiCi's Marks without CiCi's consent, there is considerable likelihood of consumer confusion between the Restaurant and authorized CiCi's franchise locations. *See Paulsson Geographical Servs., Inc., v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (holding that district courts need not analyze all "digits of confusion" when alleged infringer is using the exact marks of plaintiff); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."); *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763 (N.D. Tex. 2009) (holding that plaintiff established a likelihood of confusion sufficient to justify a preliminary injunction when defendants used plaintiff's exact marks after termination of franchise agreement); *Petro Franchise Sys., LLC v. All Am. Props., Inc.*, 607 F.Supp.2d 781, 788-89 (W.D. Tex. 2009) (holding that franchisee's unauthorized use of franchisor's marks establishes

---

MEMORANDUM OPINION AND ORDER                                    Page **11** of **31**

likelihood of confusion). As such, the only remaining question is whether Defendants are using CiCi's Marks without Plaintiffs' consent.

The Court concludes that Plaintiffs have provided evidence establishing a substantial likelihood that Defendants' present use of CiCi's Marks is unauthorized. The Franchise Agreement gives Defendants the right to use the CiCi's Marks while it is in effect; however, it expressly provides that Defendants must immediately cease the use of the CiCi's Marks upon termination of the Franchise Agreement by CiCi's. (Doc. 15-1, Ex. A-1: Franchise Agreement, § XVII(B)) (Upon termination of the Franchise Agreement, "Franchisee shall immediately and permanently cease to use . . . . the mark 'CiCi's;' and all other Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System."). Thus, if CiCi's terminated the Franchise Agreement, any continued use of the CiCi's Marks would be unauthorized. *TGI Friday's*, 652 F.Supp.2d at 768.

Plaintiffs have submitted evidence establishing that CiCi's properly terminated the Franchise Agreement. As noted above, § XVI(A)(3) gives CiCi's the authority to terminate the Franchise Agreement, effectively immediately upon written notice, if Defendants are in material default of the Franchise Agreement. (Doc. 15-1, Ex. A-1: Franchise Agreement, § XVI(A)(3)). Plaintiffs have provided undisputed evidence that Defendants were in material default when Plaintiffs sent them the Termination Notice on February 21, 2022, and that the Franchise Agreement terminated on May 22, 2022.

Prior to the Termination Notice, CiCi's sent Defendants multiple notices of default and opportunities to cure. These notices are strong evidence that Defendants were in material default when CiCi's terminated the Franchise Agreement, and Defendants have submitted no evidence calling into question that fact. The acts and omissions referenced in these notices were either material breaches of the Franchise Agreement—which, when repeated, amounted to material

default under § XVI(A)(3)(t)—or constituted standalone material defaults under the Franchise Agreement pursuant § XVI(A)(3)(j) and (s).

The October 7, 2016, Notice and the third January, 21, 2022, Notice indicate that Defendants were using unauthorized products from unauthorized suppliers, which is a material breach of the Franchise Agreement under §§ VI(A) and VII(D). The May 3, 2021, Notice and the January 20, 2021, Notice indicate that Defendants were failing to operate the Restaurant during CiCi's standard hours of operation, which is a material breach of the Franchise Agreement under §§ VI(A) and VII(E)(9). These acts and omissions constituted repeated material breaches of the Franchise Agreements that Defendants did not cure; thus, Defendants were in material default under § XVII(A)(3)(t), and CiCi's was entitled to terminate the Franchise Agreement. The first January 21, 2022, Notice indicates that Defendants failed to sign up for CiCi's online delivery system. Thus, after failing to sign up for the online system within thirty days of the notice, Defendants were in material default under § XVI(A)(3)(s), and CiCi's was entitled to terminate the Franchise Agreement. Finally, the second January 21, 2022, Notice indicates that Defendants had failed to submit their weekly net sales reports for the weeks prior to the notice. Thus, after failing to submit such reports within five days of the notice, Defendants were in material default under § XVI(A)(3)(j), and CiCi's was entitled to terminate the Franchise Agreement.

Defendants have submitted no evidence disputing they were in material default when Plaintiffs sent them the Termination Notice on February 21, 2022. Defendants have not provided any evidence calling into question Plaintiffs' evidence that: (1) Defendants committed the acts or omissions described in the various notices sent to them by CiCi's; (2) Defendants failed to cure the defaults and breaches discussed in the notices and thus were in material default of the Franchise Agreement; or (3) CiCi's had the right to terminate the Franchise Agreement due to such failures.

The only pieces of evidence Defendants submitted in response to Plaintiffs' Motion are: (1) Defendants' complaint filed in the Missouri Federal Case; (2) Plaintiffs' Original Complaint in this proceeding; (3) Plaintiff's Memorandum of Law in Support of their Application and Temporary Restraining Order and Motion for Preliminary Injunction in this proceeding; (4) the Franchise Agreement and attachments thereto; and (5) the Termination Notice. (Doc. 21). It is well-established that "pleadings are not evidence of the facts alleged therein." *Pullman Co. v. Bullard*, 44 F.2d 347, 348 (5th Cir. 1930). As such, the only competent evidence Defendants have produced is duplicative of the evidence produced by Plaintiffs. Thus, the undisputed evidence in the record establishes that CiCi's had the right to terminate the Franchise Agreement.

Moreover, the evidence in the record establishes that CiCi's did in fact terminate the Franchise Agreement. On February 21, 2022, CiCi's sent Defendants the Termination Notice, which explained that CiCi's was electing to exercise its right to terminate the Franchise Agreement because Defendants failed to address the issues discussed in the January 21, 2022, Notices.[3] Despite having the right under § XVI(A)(3) to terminate the Franchise Agreement effective immediately upon written notice, the Termination Notice stated that termination of the Franchise Agreement would be effective ninety days after the date of the Termination Notice. Thus, the termination of Franchise Agreement became effective on May 22, 2022, and no evidence in the

[3] Defendants argue that the termination of the Franchise Agreement was "pre-textual" because the Termination Notice stated that CiCi's was "exercising its right to terminate the Franchise Agreement pursuant to Section XVI.A(3)(b)." (Doc. 20, pg. 7). Section XVI(A)(3)(b) states that it is a material default warranting termination of the Franchise Agreement if Defendants fail to acquire an approve location for the Restaurant within the time or manner specific by CiCi's. (Doc. 15-1, Ex. A-1: Franchise Agreement, § XVI(A)(3)(b)). Defendants' entire argument against Motion boils down to the fact that, because Plaintiffs cited to this section of the Franchise Agreement and Defendants had been operating an approved location for seven years, the termination was pretextual. In their reply, Plaintiffs argue CiCi's mistaken citation to the wrong section of the Franchise Agreement does not negate the following facts (1) Defendants were in material default of the Franchise Agreement, (2) CiCi's thus had the right to terminate the Franchise Agreement, and (3) the Termination Notice was proper despite the mistaken citation because it described the material defaults giving rise to termination. (Doc. 22, pg. 3-4). The Court agrees. Defendants have submitted no evidence whatsoever calling into question any of these three propositions, all of which are supported by the evidence in the record. Thus, the undisputed evidence in the record establishes that CiCi's terminated the Franchise Agreement, rendering Defendants' continued use of the CiCi's Marks unauthorized and in violation of the Lanham Act.

record calls into question this fact. The Termination Date has come and gone, yet Defendants continue to use CiCi's Marks in operating the Restaurant.

Accordingly, after reviewing the record as developed, the Court finds only evidence that: (1) Plaintiffs have a high likelihood of establishing that the Franchise Agreement terminated on May 22, 2022; and (2) Defendants' use of the CiCi's Marks after that date is unauthorized and in violation of the Lanham Act. Thus, the Court must conclude that Plaintiffs have shown through strong and undisputed evidence that there is a substantial likelihood that they will prevail on their trademark infringement claim. Moreover, because unfair competition claims under the Lanham Act are governed under the same standard as those for trademark infringement, the Court concludes that Plaintiffs have established a likelihood of success on the merits of that claim as well. *Scott Fetzer Co.*, 381 F.3d at 483.

> 2.   *Threat of Irreparable Injury to Plaintiffs*

The Court next considers the threat of irreparable harm to Plaintiffs if the preliminary injunction is not issued. In 2020, Congress amended the Lanham Act to provide that, when a party seeks an injunction for alleged violation of the Lanham Act, such party "shall be entitled to a rebuttable presumption of irreparable injury upon a finding of . . . a likelihood of success on the merits[.]" 15 U.S.C. § 1116(a). Because the Court concludes that Plaintiffs have established a substantial likelihood of success on the merits or their trademark infringement claim, the Lanham Act entitles Plaintiffs to the presumption of irreparable injury. Defendants make no effort to rebut this presumption, falling back on their argument that Plaintiffs have not established a likelihood of success on the merits of their trademark infringement claim. Unpersuaded by those arguments, the Court concludes that Plaintiffs have established a threat of irreparable harm if the Court does not grant the preliminary injunction.

---

MEMORANDUM OPINION AND ORDER

3. *Balance of Harms*

The Court next concludes that the threatened harm to Plaintiffs outweighs the threat of harm to Defendants. If the preliminary injunction is not issued, CiCi's loses control over its marks and faces a substantial threat to its reputation and the goodwill it has built in its brand. "A bad experience at one location of what is supposed to be a relatively uniform chain may influence the customer to view the entire chain poorly." *Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3:01-cv-0306-D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001). "[I]f Franchisees fail to provide the quality of service customers expect, customers will almost certainly attribute poor service to Plaintiffs and could be discouraged from returning to other [of Plaintiffs'] franchises in the future." *Petro Franchise Sys.*, 607 F.Supp.2d at 795.

Defendants state that "the evidence submitted by [CiCi's] does not establish that the harm [CiCi's] will allegedly suffer if the [Motion] is denied is any greater than any harm Defendants will suffer if the [Motion] is granted." (Doc. 20, pg. 7). However, Defendants do not provide any evidence of the harm they will suffer and merely state that Plaintiffs are attempting "to starve Defendants of the ability to continue operating as a franchise." (Doc. 20, pg. 7). Any harm to Defendants from being preliminarily enjoined from using the CiCi's Marks in violation of the Lanham Act is not irreparable because "the harm suffered by the closing of the [Restaurant] is calculable through money damages." *TGI Friday's*, 652 F.Supp.2d at 772 (citing *Petro Franchise Sys.*, 607 F.Supp.2d at 796-97 (explaining that the value of a franchise can be calculated in several ways and holding that—because the terminated franchisee's threated harm is compensable—the threatened harm to franchisor is greater)).

Courts "usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Ramada Franchise Sys.*, 2001 WL 540213, at *3; *see also TGI Friday's*, 652 F.Supp.2d at 773 ("Especially

where TGIF has established that it has a substantial likelihood of prevailing on its trademark infringement claim, the court is not persuaded that it should deny TGIF injunctive relief based on the threat of harm caused by defendants' inability to use TGIF's marks.") (citing *Ramada Franchise Sys.*, 2001 WL 540213, at *3). The Court finds no reason to deviate from this practice and concludes that the significant threat of irreparable injury to Plaintiffs outweighs the threatened harm to Defendants.

       *4.     Public Interest*

       Finally, the Court concludes that issuing a preliminary injunction preventing Defendants from using the CiCi's Marks will not disserve the public interest. In *TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*, this Court held that the public interest weighs in favor of granting preliminary injunctions in Lanham Act cases where Plaintiffs have established a likelihood of succeeding on the merits. There, this Court stated:

> The public interest "promotes the protection of valuable trademarks and service marks in a capital-based economy that rewards success through competition." *Ramada Franchise Sys.*, 2001 WL 540213, at *3; *see also Petro Franchise Sys.*, 607 F.Supp.2d at 797 ("[B]ecause there is a high probability of success on the merits of a trademark claim, the public interest is not disserved by an injunction prohibiting Franchisees from using Plaintiff's marks."); *Quantum Fitness Corp.*, 83 F.Supp.2d at 832 ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."). The public also has an interest in not being deceived into believing that it is dining at a TGI Friday's restaurant that is no longer affiliated with TGIF and that is using TGIF's marks without authorization. *See, e.g., S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir.1992) ("In a trademark case, the public interest is most often a synonym for the right of the public not to be deceived or confused. Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." (internal citations and quotation marks omitted)).

*TGI Friday's*, 652 F. Supp. 2d at 773. Defendants have made no argument as to why the Court should deviate from its holding in *TGI Friday's*. The Court concludes there is no reason to do so,

and, as such, finds that preliminarily enjoining Defendants from using the CiCi's Marks does not disserve the public interest.

In sum, the Court concludes that all four factors weigh in favor of enjoining Defendants from using CiCi's Marks in violation of the Lanham Act. Next the Court considers whether those factors weigh in favor of enjoining Defendants from operating a competitive business within ten-miles of the Restaurant in violation of the Franchise Agreements post-termination non-competition covenant.

**B.      Breach of Contract—Post-Termination Non-Competition Covenant**

*1.      Likelihood of Success on the Merits*

The Court turns to the question of whether Plaintiffs have established a substantial likelihood that they will prevail on their breach of contract claim relating to Defendants' alleged violation of the non-competition covenant contained in the Franchise Agreement. For the reasons discussed below, the Court concludes that they have.

Under Texas law, the elements of a breach-of-contract claim are: (1) "the existence of a valid contract," (2) "performance or tendered performance by the plaintiff," (3) "breach by the defendant," and (4) "damages sustained as a result of the breach." *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731 (5th Cir. 2018) (citations omitted). The Court concludes that the record as developed establishes a substantial likelihood that Plaintiffs can satisfy each of these elements.

(i)      The Non-Competition Covenant is a Valid Contract.

Section X(C) of the Franchise Agreement embodies an agreement by Defendants not to compete with CiCi's for a continuous two-year period after termination of the Franchise Agreement. (Doc. 15-1, Ex. A-1, Franchise Agreement, § X(C)). Specifically, Defendants agreed

that—for a continuous interrupted period of two years after termination of the Franchise Agreement—they would not:

> [O]wn, maintain, operate, engage in, be employed by or have any financial or beneficial interest in (including any interest in limited liability companies, corporations, partnerships, trusts, unincorporated associations or joint ventures), advise, assist, aid, make loans to, or otherwise support any business that (i) derives more than fifty (50%) of its revenue from selling pizza (including, but not limited to, fresh, frozen or unbaked pizza) using the distribution methods (including dine-in, carry-out or catering) authorized by Franchisor, or (ii) functions as a commissary to sell or lease to or supply any such business and which is located, or is intended to be located:
>
> > (i) at the Approved Location; or
> >
> > (ii) within the Protected Area; or
> >
> > (iii) if this Agreement is executed pursuant to a development agreement, within the development area; or
> >
> > (iv) within a ten (10) mile radius of (A) the Approved Location, (B) the Protected Area, (C) the development area, if applicable, or (D) any CiCi's brand food service facility in existence or under construction as of the earlier of (x) the expiration or termination of, or the transfer of all of Franchisee's interest in, this Agreement; or (y) the time a Controlling Principal ceases to satisfy the definition of Controlling Principal, as applicable.

(Doc. 15-1, Ex. A-1: Franchise Agreement, § X(C)(2)(c)). Whether this non-competition covenant is a valid contractual provision turns on whether it is enforceable under Texas law.[4]

The enforceability of a non-compete agreement is a question of law for the Court. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir.2004) (quoting *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex.App.—Houston [1st Dist.] 2001, no pet.); *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 643 (Tex.1994). Section 15.50 of the Texas Business and Commerce Code governs the enforceability of non-competition covenants and states:

---

[4] The Franchise Agreement contains a choice-of-law provision selecting Texas law. (Doc. 15, Ex. A-1: Franchise Agreement, § XVII(H)).

> Notwithstanding Section 15.05 [which generally declares restraints on competition unlawful] of this code, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COMM. CODE §15.50. Thus, the threshold issue for the enforceability of a non-competition covenant is twofold: (1) whether there is an otherwise enforceable agreement and (2) whether the covenant is ancillary to that agreement. *Light*, 883 S.W.2d at 644. Then the Court must examine whether the limitations on competition imposed by the non-compete covenants are reasonable and no more restrictive than necessary. *See* TEX. BUS. & COMM. § 15.50.

It is undisputed that the Franchise Agreement is an enforceable agreement. Thus, the question becomes whether the non-competition covenant is ancillary to the Franchise Agreement. The Court concludes that it is. "An agreement is ancillary to an otherwise enforceable agreement if 'it is part of and subsidiary to an otherwise valid transaction or relationship which gives rise to an interest worthy of protection.'" *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 123 (5th Cir. 1993) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990)). A promisee's legitimate interests worthy of protection include its business goodwill, trade secrets, or other confidential or proprietary information. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991).

The Franchise Agreement states that "the primary reason" for the non-competition covenant is that CiCi's gives its franchisees "valuable training and Confidential Information which are beyond their present skills and experience," giving franchisees a "competitive advantage" in operating their CiCi's restaurants. (Doc. 15-1, Ex. A-1: Franchise Agreement, § X(C)). Thus, the consideration CiCi's gave Defendants—specialized training, confidential information, and rights—in exchange for Defendants' promise not to compete gave rise to CiCi's interest in

---

MEMORANDUM OPINION AND ORDER                                    Page **20** of **31**

restraining Defendant's from competing. Thus, the non-competition agreement is ancillary to the overall Franchise Agreement. *See Amerispec, Inc. v. Metro Inspection Servs., Inc.*, No. 3:01-CV-0946-D, 2001 WL 770999, at *3 (N.D. Tex. July 3, 2001) (concluding that non-compete covenant was ancillary to franchise agreement because franchisee agreed not to compete in exchange for franchisor's promise to provide proprietary information and training).

Next, the Court concludes that the non-competition covenant's "limitations as to time, geographical area, and scope of activity to be restrained . . . are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest[s]" of CiCi's. TEX BUS. & COMM. § 15.50. The covenant requires that Defendants refrain from operating a competitive business within a ten-mile radius of the Restaurant, the protected area identified by the Franchise Agreement, or any other CiCi's location for a period of two years from the date on which the Franchise Agreement expires or terminates. Under Texas law, the focus of an inquiry into the reasonableness of a non-competition covenant is "on the need to protect a legitimate business interest of the promisee and the hardship of such protection on the promisor and the public." *DeSantis*, 793 S.W.2d at 683. Plaintiffs have submitted evidence establishing that the limitations in the non-competition covenant are necessary to protect CiCi's goodwill, reputation, and place in the market. Defendants have provided no evidence whatsoever that the non-competition covenant is unreasonable. In fact, in their response to the Motion, Defendants do not address the non-competition covenant at all.

CiCi's Chief Operating Officer Jeff Hetsel testifies—via sworn declaration—that Defendants violation of the non-competition covenant damages CiCi's marketplace goodwill, reputation, and place in the market. With respect to geographical area and scope of activities to be restrained, Hetsel testifies that preventing Defendants from operating a competitive pizza

restaurant within ten miles of the formerly protected area is necessary to ensure that CiCi's can re-franchise in the market. Specifically, Hetsel testifies that—in his experience—it is difficult to find a new franchisee when a competitive business in the market is "using all the know-how and proprietary systems and methods that afford [CiCi's] franchisees a competitive advantage." (Doc. 15-1, Ex. A: Hetsel Decl., ¶¶ 48-49). With respect to the two-year time restraint, Hetsel testifies that preventing Defendants from operating a competitive business for two years is necessary to "enable the public's association of the [CiCi's] brand and [Defendants'] business to fade." (Doc. 15-1, Ex. A: Hetsel Decl., ¶ 45). He testifies that, even if Defendants cease using CiCi's Marks, a sudden switch from CiCi's to an independent or other brand would cause confusion and harm CiCi's reputation and goodwill. (Doc. 15-1, Ex. A: Hetsel Decl. ¶¶ 45). The Court concludes that the parameters of the non-competition covenant are reasonable and no more restrictive than necessary. S*ee, e.g.*, *Meineke Disc. Muffler*, 999 F.2d at 123-24 (enforcing a franchise agreement's twenty-mile non-competition covenant); *Amerispec*, 2001 WL 770999 (enforcing a franchise agreement's ten-mile non-competition covenant); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 773–74 (Tex. App.—Beaumont 1992, writ denied) (enforcing a franchise agreement's two-year non-competition covenant). Defendants have not introduced any evidence whatsoever establishing that the non-competition is covenant is unreasonable and unenforceable. Accordingly, the Court concludes that Plaintiffs have established a substantial likelihood that the non-competition covenant is enforceable under Texas law and is thus a valid contract.

      (ii)    <u>Plaintiffs Performed under the Non-Competition Covenant.</u>

Next, the Court concludes that Plaintiffs have established that CiCi's performed under the non-competition covenant. As noted above, the non-competition covenant states that CiCi's promised to provide Defendants with specialized training, confidential information, and rights in exchange for Defendants' promise not to compete with CiCi's after termination or expiration of

the Franchise Agreement. *See supra* Section III.B.1.i. It is undisputed that CiCi's provided Defendants with such training, information, and rights. Thus, the evidence establishes that CiCi's performed under the non-competition covenant.

> (iii)   <u>Defendants Have Breached the Non-Competition Covenant.</u>

The Court also concludes that there is a substantial likelihood that Defendants have breached the non-competition covenant. The covenant states that, once the Franchise Agreement has been terminated, Defendants will not compete with CiCi's for two years by operating a "business that . . . derives more than fifty (50%) of its revenue from selling pizza (including, but not limited to, fresh, frozen or unbaked pizza) using the distribution methods (including dine-in, carry-out or catering) authorized" by CiCi's within ten miles of the formerly franchised location or the formerly protected area. (Doc. 15-1, Ex. A-1: Franchise Agreement, § X(C)(2)(c)). As discussed above, Plaintiffs have established a substantial likelihood the Franchise Agreement terminated on May 22, 2022. *See supra* Section III.A.1. It is undisputed that Defendants continue to operate a pizza restaurant—one using CiCi's Marks no less—despite termination of the Franchise Agreement. Accordingly, Plaintiffs have established a substantial likelihood that Defendants are currently in breach of the non-competition covenant.

> (iv)   <u>Plaintiffs Have Suffered Damages.</u>

Finally, the Court concludes there is a substantial likelihood that Plaintiffs have suffered damages as a result of Defendants' breach, as explained below in the Court's discussion of the substantial threat of irreparable harm. *See infra* Section III.B.2.

In sum, the non-competition covenant is a valid contractual provision prohibiting Defendants from operating a competitive business—as defined by the Franchise Agreement— within ten miles of the formerly franchised location and the formerly protected area for two years. The Court concludes that there is substantial evidence that Plaintiffs performed their end of the

---

bargain under the covenant and that Defendants are currently in breach of the covenant. As will be discussed, Defendants' breach has damaged Plaintiffs. Thus, Plaintiffs have established a substantial likelihood of success on the merits of their breach of contract claim relating to the non-competition covenant.

        2.    *Threat of Irreparable Injury to Plaintiffs*

The Court also concludes that Plaintiffs have established a threat of irreparable harm with respect to their breach of contract claim regarding the non-competition covenant. To establish a threat of irreparable injury, a plaintiff must show "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Plaintiffs contend that they have established a substantial threat of irreparable injury in the loss of their goodwill, damage to their reputation, and their inability to refranchise in the Branson, Missouri market. Defendants make no argument in response to Plaintiffs' contention that they will suffer irreparable injury if the Court does not enjoin Defendants from operating a competitive business in violation of the non-competition covenant. In light of the evidence presented, the Court agrees with Plaintiffs and concludes that they have established a threat of irreparable injury.

Plaintiffs have established a substantial threat of irreparable injury in a number of ways. First, Plaintiffs have presented evidence that allowing Defendants to operate a pizza restaurant—even without the use of CiCi's Marks—will result in the loss of customer goodwill. Specifically, because Defendants have operated the Restaurant under the Franchise Agreement for more than seven years, a sudden switch from CiCi's to another brand—independent or franchised—would erode CiCi's marketplace goodwill and reputation by causing further customer confusion. (Doc. 15-1, Ex. A: Hetsel Decl. ¶ 45). Second, in breaching the non-competition covenant, Defendants are utilizing CiCi's confidential information and proprietary systems. (Doc. 15-1, Ex. A: Hetsel

Decl. ¶ 47). Third, allowing Defendants to operate a competitive business within ten miles of the protected area undermines CiCi's goodwill in the marketplace by preventing CiCi's from effectively refranchising in the market. (Doc. 15-1, Ex. A: Hetsel Decl. ¶ 48). Fourth, not granting the preliminary injunction would threaten the stability of the entire CiCi's franchise system, as it will send a message to other franchisees that their non-competition covenants can be ignored without consequence. (Doc. 15-1, Ex. A: Hetsel Decl. ¶ 50).  Together, these potentialities threaten CiCi's goodwill, reputation, place in the market, and system as a whole.

"This kind of harm is inherently difficult, if not impossible to calculate in monetary damages." *CyberX Grp., LLC v. Pearson*, No. 3:20-CV-2501-B, 2021 WL 1966813, at *11 (N.D. Tex. May 17, 2021). In fact, multiple federal courts in Texas have held that, "[i]n Texas, injury resulting from the breach of a non-compete covenant is the epitome of irreparable injury." *Am. Exp. Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) (citing *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1354 (N.D. Tex.), *aff'd sub nom. Ruscitto v. Merrill, Lynch, Pierce*, 948 F.2d 1286 (5th Cir. 1991), *cert. denied*, 504 U.S. 930 (1992)); *see also CyberX Grp.*, 2021 WL 1966813, at *11; *Amerispec*, 2001 WL 770999, at *6; *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 858 (W.D. Tex. 2016) (citing *Sirius Comput. Sol., In. v. Sparks*, 138 F.Supp.3d 821, 841 (W.D. Tex. 2015) (citing, in turn, *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230 (Tex. App.—Houston [1st Dist.] 2003, no pet.))); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569 (S.D. Tex. 2014). Defendants have not provided—and the Court cannot find—any reason why the Court should deviate from its prior holdings and those of its sister courts. Accordingly, the Court concludes that Plaintiffs have established a substantial threat of irreparable injury if Defendants are not preliminarily enjoined from violating the non-competition covenant.

3.     *Balance of Harms*

Next, the Court concludes that the threatened injury to Plaintiffs outweighs the threatened harm to Defendants. As discussed above, Plaintiffs face irreparable harm absent a preliminary injunction. In their response to the Motion, Defendants state that "the evidence submitted by [CiCi's] does not establish that the harm [CiCi's] will allegedly suffer if the [Motion] is denied is any greater than any harm Defendants will suffer if the [Motion] is granted." (Doc. 20, pg. 7). However, Defendants do not provide any evidence of the harm they will suffer and merely state that Plaintiffs are attempting "to starve Defendants of the ability to continue operating as a franchise." (Doc. 20, pg. 7). While the Court recognizes Defendants' concern that a preliminary injunction threatens their business, the evidence establishes that it is substantially likely that they are operating that business in clear violation of the non-competition covenant to which they agreed. The Court concludes, based on the record before it, that Plaintiffs have established that the balance of harms weighs in their favor.

While a preliminary injunction would prevent Defendants from operating the Restaurant, it would not deprive them of their ability to make a living. While Defendants will be restricted in their conduct, they will be permitted to either open a pizza restaurant outside of the area covered by the non-competition covenant or to operate some other sort of restaurant or other business within that area. *See Amerispec*, 2001 WL 770999, at *6 (balance of harm weighed in favor of franchisor when former franchisee was likely in violation of non-competition covenant because former franchisee was able to operate a competitive business outside of the protected areas). Considering the record as developed, the Court concludes that Plaintiff has carried its burden to show that the balance of harms weighs in its favor.

4.      *Public Interest*

Finally, the Court concludes that preliminarily enjoining Defendants from violating the agreed-upon non-competition covenant does not disserve the public interest. "It is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]" *Amerispec*, 2001 WL 770999, at *6. "Moreover, the public has an interest in knowing and understanding that persons who breach their arguments may not illegally profit or otherwise benefit from such conduct." *Le-Vel Brands, LLC v. Bland*, 2019 WL 4753041, at *10 (N.D. Tex. Sept. 30, 2019). Defendants do not dispute that they agreed to the Franchise Agreement and the non-competition covenant contained therein. Nor do Defendants dispute that they are actively violating that covenant by continuing to operate the Restaurant. "The public interest is served by restricting [Defendants'] ability to benefit from their wrongful conduct." *CyberX Grp.*, 2021 WL 1966813, at *12. Accordingly, the Court concludes that preliminarily enjoining Defendants from violating the non-competition covenant does not disserve the public interest.

In sum, the Court concludes that Plaintiffs have met their burden of showing that: (1) they are likely to succeed on the merits of their breach of contract claim regarding the non-competition covenant; (2) Plaintiffs will suffer irreparable harm absent the injunction; (3) the balance of harms weighs in favor of enjoining Defendants from continuing to violate the covenant; and (4) the public interest will not be disserved by such an injunction. Thus, a preliminary injunction preventing Defendants from operating a competitive business within the protected area is proper.

**C.      Scope of the Injunction**

"When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018), *overruled on other grounds by Daves v.*

---

*Dallas County*, 22 F.4th 522 (5th Cir. 2022) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Plaintiffs request a preliminary injunction that enjoins Defendants from: (1) infringing on Plaintiffs' federally-registered trademarks and engaging in unfair competition with Plaintiffs in violation of the Lanham Act; and (2) operating a pizza restaurant within ten miles of the formerly protected area in violation of the Franchise Agreement's non-competition covenant. (Doc. 13). As discussed, Plaintiffs have established that Defendants are likely violating the Lanham Act's prohibition on trademark infringement and unfair competition. Thus, the Court concludes that the requested restraints on Defendants' use of the CiCi's Marks as laid out in Plaintiffs' proposed preliminary injunction, (Doc. 13-1), are proper as they are directly related to the established Lanham Act violations. *See Califano*, 442 U.S. at 702.

While Plaintiffs have also established that Defendants are likely violating of the non-competition covenant, the Court alters the proposed language to align preliminary injunction with the Franchise Agreement's non-competition covenant. Plaintiffs proposes language ordering:

> Defendants, each of them, and their respective agents, servants, and employees, and all persons in active concern or participation with them to comply with the post termination noncompetition covenant by ceasing to compete with Plaintiffs by *operating a pizza restaurant within ten miles of Defendants' formerly franchised location and formerly protected territory*[.]

(Doc. 13-1) (emphasis added). The proposed preliminary injunction does not define the term "operating a pizza restaurant" and is not limited to two years.

The Court alters the scope of activities to be restrained for the sake of specificity and clarity. The Court turns to the language of the non-competition covenant to define the scope of the activity to be restrained and ensure that Defendants are only enjoined from engaging in the activities from which they agreed to refrain if the Franchise Agreement was terminated. (*See* Doc. 15-1, Ex. A-1: Franchise Agreement, § X(C)(2)(c)). Because Defendants agreed not to compete with CiCi's for two years after the termination of the Franchise Agreement, and the Franchise

Agreement was effectively terminated on May 22, 2022, the Court's preliminary injunction will enjoin Defendants from violating the non-competition covenant until, at the latest, May 22, 2024.

Finally, the Court takes no issue with the geographic scope of the requested preliminary injunction with respect to competitive businesses. Defendants agreed to refrain from operating a competitive business—as defined by § X(C)(2) of the Franchise Agreement—within ten miles of the formerly approved location, the formerly protected area, or another CiCi's franchise location. Plaintiffs requested that Defendants be preliminarily enjoined from competing with CiCi's within ten miles of the formerly approved location and the formerly protected area. Because the formerly approved location lies within the formerly protected area, the Court will enjoin Defendants from operating a competitive business, as defined by the non-competition covenant, within ten miles of the formerly protected area. *See supra* n. 1. The Court concludes that limiting the portions of the preliminary injunction relating to the non-competition covenant to the conduct, time period, and geographical area identified in the covenant is appropriate because such an injunction relates directly to the Defendants' established violation. *See Califano*, 442 U.S. at 702.

### D.     Bond

Federal Rule of Civil Procedure 65(c) requires the party moving for a preliminary injunction to give "security in an amount that the court considers proper to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The amount of security "is a matter of discretion for the trial court." *Kaepa*, 76 F.3d at 628 (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). Accordingly, the Court determines that a bond of $10,000 is proper to pay the costs and damages sustained by Defendants if they are found to have been wrongfully restrained. "If [D]efendants can show that

the bond should be increased, they may move separately for that relief." *TGI Friday's*, 652 F.Supp.2d at 774 (citations omitted).

### E.      Attorney's Fees

Finally, the Court addresses the issue of attorneys' fees. Plaintiffs make a cursory request for attorneys' fees in their Motion. (Doc. 13). However, Plaintiffs neither address nor provide the Court with any case law supporting their request in their Memorandum of Law in Support of their Motion. (Doc. 14). Nor do Plaintiffs provide the Court with any documentation or demonstration of reasonable attorneys' fees in their Appendix in Support of their Motion. (Doc. 15). Accordingly, the Court denies Plaintiffs' request for attorneys' fees without prejudice to refiling.

If—in light of the Court's ruling in this Order and Memorandum Opinion—Plaintiffs wish to properly move for attorneys' fees, they may do so by filing a separate motion for attorneys' fees that: (1) identifies the claims for which Plaintiffs believe they are entitled to attorneys' fees; (2) provides the authority under which Plaintiffs believe they are so entitled; and (3) provides documentation demonstrating reasonable attorneys' fees. Any such motion must be filed with the Court no later than April 21, 2023, at 5:00 pm, central standard time.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have established all four requirements for a preliminary injunction relating to its Lanham Act claims and its breach of contract claim relating to the post-termination non-competition covenant. Accordingly, the Court hereby **GRANTS IN PART** Plaintiffs' Motion with respect to the request for preliminary injunction. Because the Court is issuing the preliminary injunction, it **FINDS AS MOOT** the application for a temporary restraining order. Finally, the Court **DENIES IN PART** the Motion

with respect to the request for attorneys' fees without prejudice to refiling. The Court will file a preliminary injunction by separate order today.

        **SO ORDERED:** March 30, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE